IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CR-12-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | O R D E R |
| v. | ) | |
| | ) | |
| BOBBY DEAN LYNCH, JR. | ) | |

This matter is before the Court on Bobby Dean Lynch, Jr.'s motion to suppress. [DE 22]. The government responded, and the matter is ripe for ruling. For the following reasons, the motion is DENIED.

## BACKGROUND[1]

Prior to the matters involved in the instant case, Bobby Dean Lynch, Jr. (hereinafter "defendant") pled guilty in Wake County District Court to fleeing or eluding arrest and abusing a child. His sentence was suspended for a period of 12 months, during which time the he was placed on probation under the supervision of the North Carolina Department of Public Safety (NCDPS) Probation Office, Franklin County. The court imposed the regular conditions of probation listed in N.C. Gen. Stat. § 15A-1343(b) and certain special conditions pursuant to N.C. Gen. Stat. § 15A-1343(b1). One condition of his probation was that the defendant would "[s]ubmit at reasonable times to warrantless searches by a probation officer of the defendant's person and of the defendant's vehicle and premises while the defendant is present, for purposes directly related to the probation supervision."

Kelvin Davis (hereinafter "Davis") lived in the same house as the defendant. Like defendant, Davis was on supervised probation and was subject to the same conditions of

---

[1] The factual background comes from the parties' representations found in defendant's motion to suppress and the government's response. Because the dispositive facts are not in dispute, the Court declines to hold an evidentiary hearing.

probation, including those listed in N.C. Gen. Stat. § 15A-1343(b). Davis' judgment included identical language to the defendant's requiring him to submit to warrantless searches.

On December 13, 2016, at 6:10 a.m., a team of law enforcement officers arrived at defendant's home, which he shared with Davis, to conduct a warrantless probation search of Davis. At the time of the search, both defendant and Davis were on supervised probation by NCDPS. The search was conducted by NCDPS, local law enforcement, and several probation officers, including Davis' probation officer.

When the officers arrived, they knocked on the front door of the residence and announced their presence. Officers spoke with Davis, who informed the officers that defendant also lived in the residence and pointed out the room in which defendant was sleeping. Davis then called the defendant out of his bedroom. The officers told defendant that they were there to conduct a warrantless search on Davis and that, for officer safety, defendant should remain in the living room while the search took place. Defendant agreed, and also gave permission for officers to conduct a protective sweep of his room.

While conducting a protective sweep of the residence, officers identified paraphernalia associated with narcotics distribution and sales such as a digital scale, numerous plastic baggies, and white powder residue in plain view in the kitchen and in Davis' room. Officers also located a stun gun in plain view on a table in the common area of the residence, which defendant admitted belonged to him. Additionally, officers located a firearm holster in Davis' room.

After these discoveries, officers learned through a computer search that defendant was also subject to warrantless searches according to the conditions of his probation. Defendant then consented to a search of his bedroom, where officers located a loaded firearm on the floor under his dresser. Defendant was subsequently arrested for violating the terms of his probation and was

charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Arraignment is currently pending.

Defendant submitted the instant motion seeking to suppress the evidence seized and statements made as a result of the search on December 13, 2016, arguing that the warrantless search of his home was unlawful under North Carolina law and violated his rights under the Fourth Amendment to the U.S. Constitution. [DE 22].

## DISCUSSION

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The Fourth Amendment generally requires the police to obtain a warrant before conducting a search." *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010). Warrantless searches and seizures are *per se* unreasonable, subject to a few well-established exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Kentucky v. King*, 563 U.S. 452, 459–60 (2011). Individuals on probation or parole, "despite a reduced expectation of privacy," still come "within the ambit of the fourth amendment's protection against unreasonable searches and seizures." *United States v. Bradley*, 571 F.2d 787, 789 n.2 (4th Cir. 1978). However, "a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." *Samson v. California*, 547 U.S. 843, 847 (2006).

The Fourth Amendment ultimately tests the reasonableness of a search, including some individualized suspicion, but "imposes no irreducible requirement of such suspicion." *Maryland v. King*, 133 S. Ct. 1958, 1969 (2013) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976)). Warrantless searches may be reasonable under certain circumstances of public

interest or "because an individual is already on notice . . . because of . . . the conditions of his release from government custody." *Id.* Ultimately, the "touchstone of the Fourth Amendment is reasonableness, not individualized suspicion." *Samson*, 547 U.S. at 855 n.4.

In *United States v. Knights*, the Supreme Court upheld a warrantless search supported by reasonable suspicion of a probationer who had agreed to warrantless searches as a condition of probation. 534 U.S. 112 (2001). The Supreme Court expressly declined to rule on whether a search of a probationer without individualized suspicion can satisfy the reasonableness requirement of the Fourth Amendment. *Id.*, at 120, n.6. The Court also underscored that the "probation order clearly expressed the search condition and Knights was unambiguously informed of it." *Id.* at 119.

Under North Carolina law, there are three statutory restrictions imposed on warrantless searches of individuals on supervised probation: (1) the search must be at a "reasonable time," (2) the search must be conducted by a "probation officer," and (3) the search must be for purposes "directly related to the probation supervision." N.C. Gen. Stat. § 15A-1343(13). Probationers are not required to submit to any other search that would otherwise be unlawful. N.C. Gen. Stat. § 15A-1343(13).

In *United States v. Midgette*, the Fourth Circuit Court of Appeals held that warrantlesss probation searches, conducted in conformity with N.C. Gen. Stat. § 15A-1343(b)(13), are reasonable under the Fourth Amendment. 478 F.3d 616, 624 (4th Cir. 2007). The Fourth Circuit noted that North Carolina has narrowly tailored the authorization for warrantless searches of probationers by imposing specific restrictions: the sentencing judge must impose the warrantless search condition, and not all probationers are subject to it; the search must be conducted at a reasonable time; the probationer must be present at the time of the search; the search must be

4

conducted for purposes specified by the court in the conditions of probation; and the search must be reasonably related to the probationer's supervision. *Id.* at 623–24. The Fourth Circuit concluded that the North Carolina statute did not require individualized suspicion, and was justified based on North Carolina's special needs. *Id.* at 624 (noting that "the North Carolina scheme requires no such suspicion").

In this case, defendant was subject to a warrantless search requirement as a condition of his probation. That probation agreement, imposed under the conditions listed in N.C. Gen. Stat. § 15A-1343, required that he "[s]ubmit at reasonable times to warrantless searches by a probation officer of the defendant's person and of the defendant's vehicle and premises while the defendant is present, for purposes directly related to the probation supervision." [DE 22-1 at 3]. Defendant argues that the search on December 13, 2016, did not comply with the conditions for probationary searches under North Carolina law and that the search violated the Fourth Amendment. Defendant argues that the search was not at a reasonable time, was not conducted for purposes directly related to supervision, and was not supported by objectively reasonable suspicion that defendant was engaged in criminal activity. The Court does not agree, and finds that the search was in compliance with North Carolina law and reasonable under the Fourth Amendment.

North Carolina law first requires that warrantless probation searches must be conducted at a reasonable time. N.C. Gen. Stat. § 15A-1343(13). The search of defendant's home took place at around 6:16 a.m. Because the search took place before sunrise when most people are still sleeping, defendant contends the search was not at a reasonable time.[2] As defendant correctly argues, there is an increased level of privacy enjoyed by citizens in their homes at night. *See*

---

[2] Defendant noted in his brief that on December 13, 2016, the time of sunrise in Louisburg was 7:16:12 a.m., an hour after the start of the search. *See* SUNRISE SUNSET, http://sunrise-sunset.org/us/louisburg-nc/2016 (last visited Apr. 5, 2017).

5

*Florida v. Jardines*, — U.S. —, 133 S. Ct. 1409, 1414 (2013) ("[W]hen it comes to the Fourth Amendment, the home is first among equals."); *Coolidge v. New Hampshire*, 403 U.S. 443, 477 (1971) (describing midnight entry into a dwelling as an "extremely serious intrusion"); *Jones v. United States*, 357 U.S. 493, 498 (1958) (Noting it is "difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home."). However, defendant admits that "6:16 a.m. may technically qualify as daytime," and the Federal Rules of Criminal Procedure define "daytime" for purposes of search warrant execution as between "6:00 a.m. and 10:00 p.m." Fed. R. Crim. P. 41(a)(2)(B). Thus, this search cannot be neatly categorized as a "nighttime" search, and nor would it be appropriate for the Court to tie the reasonableness of a search to a single factor such as when the sun rises on a particular day. *See United States v. Rizzi*, 434 F.3d 669, 675 (4th Cir. 2006) (stating that "the appropriate time for a search of a home is not amenable to a universal rule. The same privacy interest exists night and day, every day, and the Fourth Amendment knows no holidays. What differs is how individuals experience intrusions on that privacy.").

Rather, the Court finds that, in assessing the circumstances of this search, the special needs of the State, and the conditions of probation agreed to by both defendant and Davis, that the search was not at an unreasonable time. This was not clearly a nighttime search, and would not be considered a daytime search if made pursuant to a warrant. It was also not made to further law enforcement objectives, but the state of North Carolina's special needs of promoting the rehabilitation of probationers and protecting the public's safety from those at a higher risk of recidivism. Additionally, both defendant and Davis had agreed to submit to warrantless searches, and were aware that they were subject to supervision and monitoring to ensure their compliance with the terms of their probation. Their expectations of privacy were consequently reduced as a

6

result of probation, which further supports the reasonableness of the time of this search. For these reasons, the Court finds that the search was conducted at a reasonable time.

Next, the Court finds that the search was properly conducted by a probation officer. The parties do not dispute that both Davis' probation officer, among several other probation officers and law enforcement officials, were present for the initial search of Davis. The fact that police officers were present or involved in the search does not violate the requirements of N.C. Gen. Stat. § 15A-1343. *Midgette*, 478 F.3d at 625–26 ("While North Carolina's probation law authorizes only probation officers to conduct warrantless searches, that authorization does not preclude the probation officer from obtaining help from the police department for the purpose of physically conducting the search."). Nor does North Carolina law require that only the specific probation officer assigned to defendant be the one to conduct the search that evolved out of the search of Davis. Rather, the probation agreement and North Carolina law only require that "a probation officer" conduct the search. N.C. Gen. Stat. § 15A-1343(13) (emphasis added). To hold otherwise would not serve North Carolina's legitimate interest in administering its probation system and would unnecessarily burden the efforts of probation officers, who generally supervise probationers as a group.

Finally, the Court finds that the search of defendant was conducted for purposes directly related to probation supervision. North Carolina law does not require that a warrantless search be conducted by the probation officer individually assigned to a probationer in order to be "directly related to probation supervision." Rather, these two requirements (that the search be conducted "by a probation officer" and "for purposes directly related to probation supervision") are both distinct and necessary conditions for the warrantless search to be lawful. Nor does the fact that the search of defendant evolved out of a search of his roommate necessarily indicate that the

7

search was unrelated to the conditions of his probation. Rather, whether a warrantless search of a probationer was related to the terms of his probation is a fact-specific inquiry that assesses whether the State's special interests in enforcing its probation scheme are implicated by the circumstances giving rise to the search.

Such interests were implicated here. Defendant does not dispute that the warrantless search of Davis was legitimate and related to Davis' terms of probation. Defendant also does not dispute that, while conducting their search of Davis, law enforcement and probation officers found multiple pieces of drug-related contraband and a stun gun in plain view, and that defendant admitted to owning the stun gun. Finding these items gave the officers reasonable suspicion to suspect more contraband in the house and to suspect that defendant had violated the terms of his probation.[3] Thus, by the time officers began a warrantless search of defendant, the officers were justified in continuing their search for further evidence of defendant's recidivism or probation violations. Therefore, the search of defendant was conducted for purposes directly related to his supervision, and the Court finds that the search complied with North Carolina law.

In addition to arguing that the terms of defendant's probation were violated by the search, defendant also argues that his rights under the Fourth Amendment were transgressed because officers lacked reasonable suspicion to believe that defendant was engaged in criminal activity when conducting the search. As noted before, the Fourth Circuit has concluded that searches conducted in accordance with North Carolina's probation scheme are reasonable under the

---

[3] The conditions of defendant's probation stated that he could not possess a firearm "or other deadly weapon listed in G.S. 14-269." [DE 22-1 at 3]. This statute lists stun guns within its definition. N.C. Gen. Stat. § 14-269(a) ("It shall be unlawful for any person ... to carry concealed about his or her person any ... stun gun ...."). The conditions also state that defendant shall "[n]ot use, possess, or control any illegal drug or controlled substance ... not knowingly associate with any known or previously convicted users, possessors, or sellers of any such illegal drugs or controlled substances; and not knowingly be present at or frequent any place where such illegal drugs or controlled substances are sold, kept, or used." [DE 22-1 at 3].

8

Fourth Amendment, even though North Carolina does not require particularized or reasonable suspicion to initiate such warrantless searches of probationers. *See Midgette*, 478 F.3d at 624 (concluding that the North Carolina statute did not require individualized suspicion, was justified based on North Carolina's special needs, and that "searches conducted in conformity with the statute are reasonable under the Fourth Amendment"). The warrantless search of defendant was in conformity with the North Carolina probation statute and was justified by the State's special needs. Therefore, the search was reasonable under the Fourth Amendment. *See id.*

## CONCLUSION

For the foregoing reasons, defendant's motion to suppress is DENIED. [DE 22].

SO ORDERED, this 6 day of April, 2017.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE